FILED
2008 Sep-25  PM 01:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **BOBBIE LEANNE CONDREY** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:07-CV-1334-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner of** | } | |
| **Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Bobbie Leanne Condrey brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability and disability insurance benefits under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed applications for a period of disability and disability insurance benefits on April 22, 2005, alleging a disability onset date of August 4, 2004. (Tr. 39-41). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 30-38). ALJ Randall C. Stout heard Plaintiff's case via video hearing on March 22, 2007. (Tr. 13, 419A-53). In his decision dated May 18, 2007, ALJ Stout determined that Plaintiff was not disabled and not eligible for disability insurance benefits. (Tr. 13-22). The ALJ further determined that Plaintiff failed to meet the

disability requirements of the Act and retained the residual functional capacity ("RFC") to perform a full range of light work with the following restrictions:  no work at unprotected heights or around dangerous, moving machinery; and no climbing of ladders, ropes, and scaffolding.  (Tr. 15-16).  The ALJ found Plaintiff capable of performing her past relevant work as performed in the national economy and as she has generally performed that work.  (Tr. 21).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of the hearing, Plaintiff was thirty-four years old and had obtained a college education.  (Tr. 39, 424).  Plaintiff previously worked as a caseworker, counselor, office manager, cashier, and as a sales associate.  (Tr. 101-02, 126-33).  Plaintiff alleges that she has been unable to engage in substantial gainful activity since August 4, 2004, due to a mixed connective tissue disease, fibromyalgia, chronic pain, joint pain and stiffness, edema, back pain, bursitis, carpal tunnel syndrome, migraine headaches, and fatigue.  (Tr. 70-71, 99-100, 424-25).  Plaintiff was insured for disability insurance benefits on her alleged onset date of disability of August 4, 2004.  (Tr. 13).

At the video hearing, Plaintiff testified that she stopped working as a child welfare social worker after she was asked to leave that job because she was unable to keep up with her duties.  (Tr. 426).  Plaintiff further testified that she cannot work due to multiple joint pain and fatigue caused by her fibromyalgia and is disabled due to her depression.  (Tr. 17, 427, 433, 444).  Plaintiff explained that she stays in bed 90% of the day but never feels rested.  (Tr. 427).  Additionally, Plaintiff testified to having migraine headaches two or three times per week which last for several days in duration.  (Tr. 437-38).  Plaintiff stated that her headaches increase with sun or fluorescent light exposure and she frequently develops rashes.  (Tr. 439).  Plaintiff also testified that she drives

to town once a week, but this causes her legs to swell and her to suffer from fatigue.  (Tr. 443-44).  Plaintiff stated that she spends time helping her child with his homework, fixes TV dinners, and does a few loads of laundry each week.  (Tr. 446).  Plaintiff's extended family also helps with child care.  (*Id*.).

Following a review of the medical evidence, Plaintiff's testimony, and that of the vocational expert ("VE"), the ALJ found Plaintiff's fibromyalgia, polycystic ovarian disease, probable mild diabetes, mild degenerative joint disease, mild bursitis in the hips, depressive disorder of moderate severity, and obesity were severe impairments but not severe enough to meet or equal a listed impairment.  (Tr. 15, Finding No. 3).  The ALJ also determined that Plaintiff has a RFC to perform a full range of light work with limited restrictions.  (Tr. 15-16, Finding No. 5).  The ALJ determined Plaintiff was able to return to her past relevant work as a caseworker, an office manager, work as a cashier as generally performed in the national economy, and work as a sales clerk as she performed it and as it is generally performed in the national economy.  (Tr. 21, Finding No. 6).  Further, the ALJ found Plaintiff has not been under a disability as defined in the Act.  (Tr. 21, Finding No. 7).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.  The claimant's RFC is what the claimant can do despite her impairment.  Finally, the

Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability and that she has met the disability insured status requirements of the Act. (Tr. 15).  The ALJ also found Plaintiff's subjective complaints regarding her ability to work are reasonably expected from her medically determinable impairments; however, Plaintiff's testimony regarding the intensity, persistence and limiting effects are not entirely credible and are inconsistent with the medical evidence in the record. (Tr. 17).  Although the ALJ determined that Plaintiff retains the RFC to perform a full range of light work, he further noted there were certain additional conditions that accompany those restrictions:  no work at unprotected heights or around dangerous, moving machinery; and no climbing of ladders, ropes, and scaffolding.  (Tr. 16).

III.    **Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed.  (Doc. #8, at 26). Plaintiff asserts that there are two reasons why this court should grant the relief sought: (1) the ALJ failed to properly evaluate the restrictions of Dr. Prem K. Gulati, the consultative examining physician; and (2) the ALJ failed to properly apply this circuit's pain standard. (Doc. #8, at 10-25).

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894

F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.       Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.       The ALJ Properly Considered Restrictions of the Consultative Examining Physician, Dr. Prem K. Gulati.

Dr. Gulati performed a consultative examination of Plaintiff on July 18, 2005.  (Tr. 251-58). Plaintiff contends that the ALJ failed to give proper weight to Dr. Gulati's restrictions as a result of his consultative examination of Plaintiff.  (Doc. #8, at 10).  Dr. Gulati found Plaintiff's range of motion of her cervical spine to be normal with no cyanosis, clubbing, or edema in her extremities, and her range of motion was normal.  (*Id.*).  According to Dr. Gulati's records, Plaintiff had no trouble getting off the exam table and her gait was normal and she was able to squat and rise up. (*Id.*).  Dr. Gulati found Plaintiff may not be able to do any jobs that require sitting, standing, lifting, or carrying, but she could perform sitting jobs when her condition is flared up.  (Tr. 253).

Factors to be considered in determining the weight to be given to a treating physician's opinion include the length of the treatment relationship and frequency of examinations, the nature and extent of the treatment relationship, the supportability of the opinion, its consistency with the record, and the physician's specialization.  *See* 20 C.F.R. § 416.927(d)(2)-(6).  The "testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown

to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-60 (11th Cir. 2004)(quoting *Lewis v. Callahan*, 125 F.3d, 1436, 1439 (11th Cir. 1997)).

The ALJ specifically noted that he gave considerable weight to Dr. Gulati's opinion. (Tr. 21). The ALJ's decision is consistent with Dr. Gulati's opinion that Plaintiff could return to her past relevant work as a case worker and as an office manager as she performed them (and those duties are within her RFC of light work). (Tr. 15, 21, 253, 447). Although the ALJ found Dr. Gulati's opinion consistent with the medical records, the ALJ did not find Plaintiff's allegations of disabling limitations entirely credible. (Tr. 17). While Plaintiff has reported continued pain and limitations, there is no evidence of significant limitations. Furthermore, none of Plaintiff's treating physicians have indicated that her impairments have resulted in disabling limitations. (Tr. 21).

Therefore, the ALJ's finding is supported by Dr. Gulati's opinion. (Tr. 15-16, 21). Mentally, Plaintiff would have no greater than moderate limitations in her activities of daily living, moderate limitations in her social functioning, and moderate limitations in her concentration, persistence and pace. (Tr. 16). The ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments as defined by the Act. (Tr. 15). Accordingly, the ALJ found Plaintiff has not been under a disability as the Act defines that term and that Plaintiff, therefore, is not entitled to a period of benefits. (Tr. 21-22).

**B.     The ALJ Properly Applied the Eleventh Circuit's Three-Part Pain Standard.**

Plaintiff's second argument is that the ALJ failed to properly apply the Eleventh Circuit's Three-Part Pain Standard. (Doc. #8, at 16-27). Plaintiff claims that the ALJ failed to properly consider the medical evidence of record regarding her subjective pain complaints. (Doc. #8, at 16). The ALJ found Plaintiff's severe impairments to be fibromyalgia, polycystic ovarian disease,

probable mild diabetes, mild degenerative joint disease, mild bursitis in the hips, a depressive disorder of moderate severity, and obesity. (Tr. 15, Finding No. 3). Plaintiff contends that the ALJ failed to consider the severity of her medical conditions, and in particular her fibromyalgia, which her examining and treating physicians noted in her medical records. (Doc. #8, at 18). Plaintiff contends, therefore, that the ALJ did not correctly apply the three-part pain standard when considering both her subjective complaints and medical records. (Doc. #8, at 18).

The standard for subjective complaints of pain or other symptoms requires satisfaction of two parts of the three-part test as follows:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although an ALJ may elect not to credit a claimant's subjective complaints, *see id.*, if an ALJ discredits a claimant's subjective description of their condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Such a finding does not require the use of thaumaturgic phrases; all that is required is a clearly supported credibility determination. *See id.* However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

In October 2004, Plaintiff was seen by Dr. Smita S. Shah for problems with a spastic colon and underwent a colonoscopy with a biopsy. (Tr. 18, 198-203). The procedure showed no colitis

and only minimal active proctitis.  (Tr. 199).  Also, there is little if any evidence in the record that Plaintiff has continued to have significant problems related to her spastic colon.

Plaintiff was found to be severely obese, but the ALJ found no medical evidence to demonstrate that she has any significant limitations related to her excessive weight.  (Tr. 18). Regarding Plaintiff's diabetes, Dr. Cheryl C. Bazzle's records indicate that in August 2006, Plaintiff's lab results showed she had an elevated fasting insulin level.  (Tr. 294).  In October 2006, her lab results showed she was insulin resistant, and Plaintiff stated to Dr. Bazzle that she had "completely quit sugar."  (Tr. 292).  Dr. Bazzle's notes indicate Plaintiff was in no apparent distress with no edema.  (*Id*.).  Therefore, there is no evidence Plaintiff has any functional limitations due to her diabetic symptoms.  (Tr. 18).

Although Plaintiff testified that she is disabled due to her depression, the medical records from Alabama Psychiatric Services indicate that she has only been treated sporadically and has not shown significant limitations resulting from her depressive symptoms.  (Tr. 17, 397-406).  Dr. Kay Osborn, a licensed counselor at Alabama Psychiatric Services, reported that Plaintiff's Global Assessment of Functioning ("GAF") score on December 5, 2006 was 60 which is indicative of only moderate limitations in her functional abilities.  (*Id*.).  That score is generally consistent with the GAF score of 65 she received on July 19, 2005 from Dr. Lois W. Petrella.  (Tr. 254-58).  These GAF scores are indicative of only some mild symptoms or some difficulty in social, occupational, or school functioning.  (Tr. 18).  Dr. Petrella opined that Plaintiff would be able to understand, carry out, and remember instructions in a work setting and would have no difficulty relating to supervisors and co-workers.  (Tr. 18, 254-58).

Plaintiff also testified to a history of rashes due to sun exposure. (Tr. 438). Also, Plaintiff testified that exposure to fluorescent lights gives her migraine headaches. (Tr. 439). However, on June 26, 2006, Dr. Bazzle noted that Plaintiff only reported a rash due to sun-exposure after a trip to the beach with no additional evidence of any continued problems. (Tr. 297). Plaintiff was treated for headaches at Crown Comprehensive Headache Center from February 2003 to July 2004, but there is no evidence that her headaches have been at a level which is disabling. (Tr. 187-93). Other than Plaintiff's testimony of problems due to fluorescent light exposure, there is nothing in the record that indicates she has suffered any functional limitations due to sun exposure. (Tr. 18, 187-93).

Here, the ALJ specifically found that Plaintiff's subjective complaints of pain and alleged physical restrictions at all times on and after August 4, 2004, were not corroborated by objective evidence. (Tr. 15-17). Thus, although the ALJ found that Plaintiff met the first requirement of the pain standard by demonstrating that she has continued to be treated for her impairments, the ALJ found that neither prong of part two of the pain standard was met. (Tr. 17). The ALJ concluded that the objective evidence does not confirm the severity of Plaintiff's alleged symptoms, and Plaintiff's testimony was less credible than the substantial evidence of record. (Tr. 17.)

A review of the evidence of record demonstrates that the ALJ properly discredited Plaintiff's subjective complaints and concluded that the objective evidence indicates Plaintiff possesses the RFC to perform light work. (Tr. 17-22). As the ALJ noted, although the documentary evidence establishes the underlying medical conditions are capable of producing pain and other limitations, the substantial evidence in the record as a whole does not support a conclusion that those medical conditions are of sufficient severity to give rise to disabling pain. (Tr. 20). Furthermore, although Plaintiff has been treated by several doctors for fibromyalgia, no doctor has opined that she has had

10

significant limitations related to that impairment.  (Tr. 20).  Plaintiff testified that she spends 90%
of the day in bed, however, she fixes TV dinners, drives to town once a week, and helps her son with
his homework.  (Tr. 17, 429).  During Plaintiff's psychological evaluation with Dr. Lois W. Petrella
on July 19, 2005, Plaintiff reported numerous activities including watching television, reading the
newspaper, listening to books on tape, preparing meals, doing some housework, doing the laundry,
shopping, going out to eat, and visiting relatives.  (Tr. 17, 257).

    In this case the ALJ found that Plaintiff's testimony regarding the intensity, duration, and
limitation effects of her symptoms were not entirely credible.  (Tr. 17).  Contrary to Plaintiff's
testimony, her medical records do not indicate that her impairments have limited her daily activities
or would impair her ability to perform work-related activities.  (Tr. 18).  Considering the medical
evidence, Plaintiff's statements, her treating physician's opinions as to her physical abilities, and her
testimony regarding her daily activities, this court finds there is substantial evidence which supports
the ALJ's decision not to fully credit Plaintiff's subjective complaints.

    The ALJ called Karen M. Vessel, a vocational expert ("VE"), to testify.  (Tr. 13).  The VE
was present throughout the hearing and familiar with Plaintiff's background.  (*Id.*).  The VE
considered Plaintiff's past relevant work and concluded that:  (1) Plaintiff's past relevant work was
within her RFC; (2) Plaintiff would be able to perform her past relevant work as a caseworker,
cashier, office manager, and as a sales clerk; and (3) Plaintiff could work other jobs such as an
officer helper of which there are 1,900 of these jobs in the state, and 117,000 in the national
economy, a sales attendant with 3,100 in the state and 163,000 in the national economy, and a rental
clerk with 1,000 in the state and 60,000 in the national economy.  (Tr. 21).

Based on the VE's testimony, the ALJ found that Plaintiff's past relevant work was within her current RFC, and Plaintiff would be able to perform a significant number of alternate jobs as well.  (Tr. 21).  Further, the ALJ found that a significant number of these jobs do exist in the national economy and that Plaintiff was not under a disability at any time through the date of the decision.  (Tr. 21-22).

## VI.     Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____25th_____ day of September, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE